## CIVIL COMPLAINT

Jan H. Lovlie,
Plaintiff,

24-cv-1502 (SRN/JFD)

v.

**RECEIVED**
APR 2 4 2024
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

| | |
|---|---|
| United States | |
| United States of America | |
| United States Treasury | |
| Internal Revenue Service | |
| Dan P. Weiberg | Agent, Internal Revenue Service, 512 Montrose Lane, St. Paul, MN |
| Michael Karl | Agent, Internal Revenue Service, St. Paul, MN |
| Timothy Nichols | Agent, Internal Revenue Service, St. Paul, MN |
| David L. Zoss | Attorney, Internal Revenue Service, St. Paul, MN |
| Pam M. Owens | Revenue Officers, Internal Revenue Service, Brooklyn Center, MN |
| Faris R. Fink | Former Midwest Area Director, Internal Revenue Service, St. Paul, MN |
| Michael R. Pahl | Attorney, Tax Division, U.S. Department of Justice, Washington, D.C. |
| Michael J. Roessner | Attorney, Tax Division, U.S. Department of Justice, Washington, D.C. |
| John A. Dicicco | Attorney, Tax Division, U.S. Department of Justice, Washington, D.C. |
| Manly A. Zimmerman | Attorney, Minneapolis, MN |
| Philip Doyle | Cincinnati, OH |

Defendants.

STATE OF MINNESOTA    )
                     ) ss    AFFIDAVIT OF JAN H LOVLIE
COUNTY OF HENNEPIN   )

This is a civil complaint against the defendants listed above, filed Pro Se.
A trial by jury is requested.

This complaint is submitted under, and is subject to, the Racketeer Influenced and Corrupt Organizations Act (RICO), also known as Organized Crime Control Act of 1970, enacted October 15, 1970.

1

I came from Norway in 1960 at age 23 to continue my education. After working at two CPA firms in the late 60s and early 70s, I started my own small bookkeeping business and I have kept that going ever since. Each year I prepare a few business tax returns, and a few personal ones as well.

I will first explain some rules related to taxation that most people have no knowledge of. This will be important and will make it easier to understand what follows.

An Internal Revenue Service (IRS) rule that seems to be rock solid and never contested, is the 3-year Assessment Statute Expiration Date (ASED). This means that 3 years from the date a tax return is filed, or April 15 of that year, whichever is later, the tax year is closed, and no additional assessment can be made by the IRS. If an additional assessment is made by the IRS, such assessment is not to be collected, and no effort must be made to collect such assessment. If the taxpayer files an amended tax return after this date requesting a refund, the taxpayer will not get that refund.

If an IRS agent is close to finishing an audit but needs more time, the IRS agent may prepare a Form 872, Consent to Extend the Time to Assess Tax. He will then request that the taxpayer agrees to the extension of the ASED and request that the taxpayer signs Form 872. The extension must have a specific end date, such as 6 months from the signature date, as an example.

The taxpayer has the option not to agree to the extension and to not sign this form. In order to be effective the Form 872 must be signed by an IRS officer and by the taxpayer on or before the statute expiration date. The form's date becomes the effective date of the extension.

There is also a time limit for how long IRS can collect or attempt to collect a tax assessment. From the date of a tax assessment IRS has ten years to collect. This time-period is called the Collection Statute Expiration Date (CSED). If there is more than one tax assessment, each assessment has its own CSED. When this date is reached, no more collection effort is legal, and any liens or levies must be terminated and removed.

In late part of April, 1995, one of Plaintiff's clients, Richard FitzSimmons had been handed a notice by agent Weiberg (Weiberg) that stated that his business tax returns for 1992 and 1993 had been selected for audit, and that Weiberg had been assigned to conduct these audits. The letter did not show any EIN for Mr. FitzSimmons' business, FitzSimmons Service Company, Inc.

This letter, handed to Mr. FitzSimmons by Weiberg, appeared to be self-prepared by Weiberg. It did not look official at all.

2

In the month of May, 1995, I (plaintiff) submitted to defendant Weiberg (Weiberg) powers of attorney signed by my client, Richard FitzSimmons, effective for his personal tax matters as well as on behalf of his business.

I had assisted Richard FitzSimmons with some accounting matters related to payroll records prior to this, but had prepared no personal tax returns for him, nor any business tax returns.

Weiberg contacted me by telephone on or about May 10, 1995, and demanded that I send to him copies of the corporation tax returns for FitzSimmons' business referred to above. I informed Weiberg that I had been told by Mr. FitzSimmons that these tax returns had not yet been filed. I also stated to agent Weiberg that Mr. FitzSimmons did not believe that the audit notice was legitimate, since it did not contain the corporation's EIN. I stated that he would have been supplied with copies of these tax returns as part of the standard process if the tax returns had been assigned to him for audit.

Based on information later obtained under Freedom of Information and Privacy Act (FOIA), Weiberg had himself, on June 5, 1995, obtained copies of plaintiff's personal tax returns for 1992, 1993 and 1994. At that point in time, the only relationship between Weiberg and plaintiff was the fact that I was the holder of the powers of attorney listed above. Weiberg was not at that point in time, nor later, assigned to audit any of Plaintiff's tax returns. He did this entirely on his own initiative, possibly with the assistance of his manager, Michael Karl.

On October 6, 1995, Weiberg, without being assigned to do so, initiated an audit of my personal tax returns for 1992 and 1993. He terminated this audit in the month of January 1996. He informed me of this action via telephone message. He stated explicitly that he was no longer involved, and that I did not have to provide any more information to him, nor to anyone else, unless requested to do so by someone else in the IRS.

Based on information later obtained under FOIA, Weiberg had already requested that the criminal division of the IRS initiate a criminal investigation of me. I was served a summons demanding an enormous amount of personal and corporation records for the years 1992, 1993 and 1994. This summons was served upon me by agent Timothy Nichols (Nichols) in the late part of April 1996. Nichols conducted a criminal investigation of me until late in February 1997, when the investigation was terminated. I and my attorney were so informed via certified mail. The letter simply stated that the criminal investigation had been terminated. It did not contain any derogatory statements, no reference to unreported income, nor any reference to overstated tax deductions. The enormous amount of documents supplied by me under this investigation was not returned to me by the criminal division. After several requests from my attorney, Thomas Iliff (Iliff), this information was finally returned to him in June 1997. In violation of my right of privacy, this information had been turned over to Weiberg, who was not part of the criminal division, and Weiberg was the one who delivered this information to Iliff.

From the month of May 1997, until the middle of 2001, Weiberg and possibly others at his direction, assessed large amounts of additional taxes for the years 1990, 1991, 1992, 1993,

3

1994, 1995, 1996, and 1997, against me personally, and against my corporation. The additional taxes against me were created by simply adding the gross revenue of my small business to my personal income, and by ignoring and removing all deductions. No detailed audits were performed. For any of these years, using this method for adding income, if my corporation had been a larger company with gross revenue of $5,000,000, operating profitably or not, $5,000,000 would have been added to my personal income. It should be noted that all personal and corporation tax returns had been filed timely and accurately. All revenue had been reported, and the resulting taxes due had been paid. I had no un-reported income for any of the years involved. I was never determined to, nor accused of, having any un-reported income, not by the criminal division, nor by anyone else. Large assessments were created by Weiberg, without conducting an audit, based on no actual information related to each tax return.

My attorney, Iliff, and I went through the tax court process, and attempted to reverse the assessment for one of the years, 1993. This was an incredibly costly process. Legal fees were more than $20,000. When I told my attorney that I could not afford to go through this costly and time-consuming process for the other years for which Weiberg had assessed large amounts of taxes, he advised me to ignore all those tax assessments. He stated that these assessments were barred by assessment statute of limitation, and therefore could not be collected by the IRS.

In 2005, agent Pam M. Owens, was assigned to collect the taxes that were due, based on the assessments referred to above. In the fall of 2005, I requested, under Freedom of Information Act, FOIA, a copy of my Individual Master File (IMF) for the years listed above: 1990, 1991, 1992, 1993, 1994, 1995, 1996 and 1997. The IMF is a detailed history of a personal tax return for a specific year, such as assessments, payments, penalties, and interest. I received all the information I had requested, for all 8 years, with a letter dated September 26, 2005. The chart created by the Plaintiff, in front of the copies of the IMFs (enclosed), gives a clear overview of key dates.

During his assessment process, Weiberg had, on a couple of occasions, requested that I sign a Form 872, Consent to Extend Time to Assess Tax. My attorney, Iliff, instructed me to never sign such a form, and I never did. When I examined my IMF for 1990, the first of the 8 years involved, I could not believe what I discovered. I found an extension of time to assess tax. As explained earlier, for an Extension of Time to Assess Tax to be valid, it must be dated before the expiration date of the original or previously extended statute of limitation date. It must be agreed to and must be signed by the taxpayer. It must also be signed by an IRS officer.

Since I had never signed an extension of the statute of limitation date for any year, these extensions were all invalid and fraudulent. I proceeded to analyze, line by line, all 8 IMFs, and **every one of them had a fraudulent extension of the assessment statute of limitation date.**

4

I proceeded to locate the office of the Midwest Area Director of the IRS in St. Paul. I prepared a letter directed to him for each of the 8 years, with a copy of the IMF and an explanation of the fraudulent entry in each. My letter demanded a reversal of all assessments and requested that a written confirmation of receipt of the letter be sent to my attorney, Manly Zimmerman, within 30 days. (My previous attorney, Thomas Lyle Iliff died at age 52 on November 8, 2000.)

Instead of mailing these letters, I had each letter served upon the office of the Midwest Area Director by Metro Legal Services. My letter for the tax year 1990 was served on November 9, 2005. My letter for the tax year 1991 was served on November 10, 2005. My letter for the tax year 1992 was served on November 17, 2005. My letter for the tax year 1993 was served on November 16, 2005. My letter for the tax year 1994 was served on November 28, 2005. My letter for the tax year 2005 was served on December 6, 2005. My letter for the tax year 2006 was served on December 6, 2005. My letter for the tax year 2007 was served on December 7, 2005

A copy of each letter, with attachments, was sent by certified mail to agent Pam M. Owens, to Treasury Inspector General for Tax Administration, Washington DC, and to Congressman Jim Ramstad. No response was received from anyone.

In July 2007 IRS started a legal action against me with the intent of taking possession of my home. The plan was to then sell the home and apply the proceeds to pay the disputed assessments that had been created by Weiberg and his associates.

My attorney at this time, Manley Zimmerman, seemed not to be very effective in his defense, but my financial position at this time did not give me the option to seek the services of another attorney. I recommended to him several things he should do, such as demanding copies of the actual Forms 872 that must have been part of the assessments against me personally. I gave him several copies of the letters with attachment that I had sent to the IRS Midwest Area Director. I told him to share those with whoever he was dealing with on the IRS side. His response on more than one occasion: "What's the use? We are up against the government. They can do anything they want."

Zimmerman's inaction caused the IRS to be granted a summary judgement, and my wife and I were given 30 days to get out of our home. We were able to get that put on hold so that we could attempt to sell our home. Going into 2009, the real estate market was at its worst. The country was in a deep recession. In April 2009, we were forced to leave our home, on very short notice. In early part of September 2009 our home was sold.

IRS continued its collection efforts against us until 2014. The Collection End Statute Date (CESD) finally stopped their efforts. But somehow their collection activity restarted in May 2022. Several liens were filed against us, some as late as in March 2024. A substantial amount of money, by our standards, was removed from a trust bank account of Nittedal Trust on March 29, 2024. Plaintiff is the trust's trustee. The IRS was represented by Philip Doyle. His title was not disclosed, nor his address.

5

Demand for Relief.

Any liens against Plaintiff, and/or any legal entity to which he has a direct connection, must be reversed, and removed. Any levy pending must be terminated.

All assessments against Plaintiff or Plaintiff's corporation, Edina Accounting, Inc., for the years 1990, 1991, 1992, 1993, 1994, 1995, 1996 and 1997 must be reversed and removed. Any funds collected and applied to these assessments must be refunded to Plaintiff, including penalties and interest that may have been added.

Clear title to their home at 5609 Schaefer Road, Edina, Minnesota, must be obtained and transferred to Plaintiff and his wife. The property was taken from them based on non-collectible tax assessments. The property must be in the same or better condition, inside and out, including grounds, as was the case in 2009 when they were forced to leave what had been their home for 30 years. The home was purchased at a reasonable price from a friend in 1979. It was nearly totally paid for in 2009. Its estimated value in 2009 was $800,000. It may now be worth $1,500,000 or more.

Monetary Relief in the amount of $12,000,000 is requested for the following reasons:

An IRS employee, Weiberg, had in May 1995 personally selected 2 years of tax returns of one of Plaintiff's clients for audit. Plaintiff told Weiberg that his activity was totally inappropriate and likely illegal. This client of Plaintiff's was ultimately not selected for audit.

From that point on Weiberg was on a mission to retaliate against Plaintiff. As retaliation he used the assessment process to illegally assess taxes against Plaintiff and his wife for 8 consecutive years, 1990 to 1997. 7 of those assessments were dated after the Assessment Statute Expiration Date, and therefore were not collectible. Weiberg successfully made these assessments appear to others to be collectible assessments. He submitted fraudulent Forms 872, or in other ways created fraudulent extensions of the assessment expiration dates. Plaintiff did not agree to, nor sign, any Form 872. Plaintiff requested copies of these fraudulent forms under Freedom of Information Act. None was received.

6

To attempt to reverse these assessments has been incredibly time-consuming and very damaging to Plaintiff's small business. The effort has been unsuccessful. Weiberg, and perhaps co-workers of his, contacted most of Plaintiff's customers, and told many not to use his services. Without being officially selected for audit, many were assessed large amounts of taxes. This activity reduced Plaintiff's income per year substantially from that time until today, 29 years later.

Plaintiff and his wife were constantly living in fear of tax liens and levies, from 1998 until 2014. It apparently ended in 2014, since all assessments were more than 10 years old. However, this activity started back up in 2022, and is ongoing. A large amount, by our standards, was taken from a trust bank account belonging to Nittedal Trust. Plaintiff is a trustee of this trust. The funds were removed at the instructions of a person named Philip Doyle, located in Cincinnati. He has not disclosed his address to Plaintiff, nor his connection to IRS, if any. These funds must immediately be returned to the account from which taken.

As a result of all this activity, Plaintiff and his wife has suffered through almost 3 decades of abuse by Defendants attempting to collect these unlawful assessments. Since their home was taken, they have had to rent a place to live. They have endured shame, embarrassment, fear, and the loss of respect of family and friends.

Relief awarded to Plaintiff must be specifically classified as non-taxable, and subject to the rules and regulations of the Rico Act.

A trial by jury is requested. The jury may determine that a larger monetary relief is needed to set an example great enough to cause the Defendants to set safeguards in their systems to prevent similar abuses in the future.

_____
Jan H. Lovlie, Plaintiff

STATE OF MINNESOTA   )
                     ) ss.
COUNTY OF HENNEPIN   )

The foregoing instrument was acknowledged before me this _22_ day of April 2024 by

_____
Notary Public

JUSTIN R LYONS
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/29

7