UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jan H. Lovlie,<br><br>Plaintiff,<br><br>v.<br><br>United States of America, et al.,<br><br>Defendants. | Case No. 24-CV-1502 (SRN/ECW)<br><br><br><br>**ORDER** |

Jan H. Lovlie, 5021 Vernon Ave. S., Ste. 175, Edina, MN 55436, Pro Se Plaintiff

Ryan Franke, DOJ-Tax Division, 1275 First St. NE, Washington, DC 20002, for Defendant United States of America

M. Gregory Simpson and Megan K. Seavey, Meagher & Geer, P.L.L.P., 33 S. 6th St., Ste. 4300, Minneapolis, MN 55402, for Defendant Manly A. Zimmerman

_____

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion to Dismiss [Doc. No. 16] filed by the United States of America (the "Government"). Also before the Court is the Motion for Judgment on the Pleadings [Doc. No. 23] filed by Defendant Manly A. Zimmerman. For the reasons set forth below, the motions are granted.

I.  **BACKGROUND**

Plaintiff Jan H. Lovlie filed this civil action in April 2024 against the United States, several individual Government Defendants (current and former Internal Review Service ("IRS") agents, IRS officers, and attorneys in the Department of Justice's ("DOJ's") Tax Division) (hereafter, the "Individual Government Defendants"), and his former private

1

attorney, Mr. Zimmerman. Mr. Lovlie asserts claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68, related to a 2007 tax collection action against Mr. Lovlie and his wife ("the Lovlies"), *United States v. Lovlie*, 07-cv-3136 (PAM/JSM) ("*Lovlie I*"). The IRS initiated *Lovlie I* to reduce to judgment certain unpaid federal tax assessments and to foreclose on federal tax liens encumbering the Lovlies' real property.[1] Additionally, in the instant lawsuit, Mr. Lovlie asserts a legal malpractice claim against Mr. Zimmerman, who represented him in *Lovlie I*. (Compl. [Doc. No. 1] at 5[2].)

### A. *Lovlie I*: Allegations and Rulings

In *Lovlie I*, the IRS asserted that approximately $906,000 in unpaid federal income taxes had been assessed against the Lovlies for the tax years 1990 to 2002, and approximately $891,000 had been assessed against Mr. Lovlie individually, for his work in preparing tax documents on behalf of his clients, resulting in understated tax liabilities for tax years 1991 to 1997. (*Lovlie I*, Compl. [Doc. No. 1] ¶¶ 11, 16.) The IRS alleged total tax liabilities of approximately $1.8 million, including interest and penalties. (*Id*. ¶¶ 11, 16.) The IRS further asserted that the Lovlies had failed to pay the assessed amounts and remained indebted to the United States. (*Id*. ¶¶ 13, 18.) Additionally, it asserted that

---

[1] As the Court discusses *infra* at 8–10, the facts concerning *Lovlie I* are expressly embraced by the pleadings and are found in filings of public record.

[2] Because the Complaint lacks individually numbered paragraphs and fails to identify legal claims in numbered counts, the Court's citations to the Complaint refer to page numbers.

the Lovlies had received notice of a federal tax lien for unpaid federal income taxes that encumbered their property. (*Id*. ¶ 19.) The IRS therefore sought to obtain judgment against the Lovlies for the unpaid taxes as well as judgment and foreclosure related to the property subject to the federal tax lien. (*Id*. ¶ 20.)

In their Answer to the Complaint, the Lovlies asserted a statute-of-limitations defense, contending that the IRS had assessed taxes for 1990 through 1997 more than three years after the couple had filed the applicable federal income tax returns, rendering the IRS assessment time-barred. (*Lovlie I*, Answer [Doc. No. 4] ¶ 8) (citing 26 U.S.C. § 6501(a)).

Ruling on the United States' Motion for Summary Judgment in *Lovlie I*, the Honorable Paul A. Magnuson first noted that the Lovlies did not contest the tax assessments for tax years 1998 to 2002. (*Lovlie I*, Summ. J. Order [Doc. No. 55] at 3.) Judge Magnuson further observed that the IRS's assessments against the Lovlies for tax years 1990 to 1994 had previously been resolved through a stipulated entry of judgment in Tax Court. (*Id*. at 2–3.) Applying res judicata, he found that the Lovlies were therefore "precluded from litigating the amount of the assessments, including penalties, or the basis for those assessment for the tax years covered by the Tax Court judgment, 1990 to 1994." (*Id*. at 3.)

In addition, Judge Magnuson rejected the Lovlies' argument that the assessment for their 1995 taxes was time-barred. (*Id*.) He found that the six-year statute of limitations applied, not the three-year limitations period asserted by the Lovlies. (*Id*.) Also, because the Lovlies produced no evidence showing that the IRS's assessments for tax years 1995 through 1997 were incorrect, Judge Magnuson found no genuine issue of material fact as

3

to the Lovlies' liability for those years. (*Id*. at 8–9.) He further observed that while "[i]t may be true that the Government has not provided documentation of the increases in the Lovlies' income for [tax years 1995 through 1997]," it was also true "that the Lovlies should have sought this documentation long ago" as "summary judgment is not the appropriate time to resolve discovery disputes." (*Id*. at 8.) Thus, Judge Magnuson granted the Government's motion for summary judgment and reduced to judgment the amount of the unpaid assessments against Mr. Lovlie individually for his work as a tax preparer ($951,691.97) and against the couple for their unpaid federal income taxes ($956,988.95). (*Id*. at 11.)

Judge Magnuson also ordered the sale of the Lovlies' home toward partial satisfaction of the nearly $2 million judgment against them. (*Id*. at 9–11.) The United States sold the residence for $630,000 and the Court ordered that $550,477.89 of the proceeds be applied to the Lovlies' federal tax liabilities and to separate penalties levied against Mr. Lovlie individually. (*Lovlie I* [Doc. No. 68].)

Subsequently, the IRS continued to collect on the remaining amounts of the Lovlies' judgment by repatriating foreign assets in Norway and garnishing funds held in a Wells Fargo Bank trust of which Mr. Lovlie was the settlor and sole trustee. (*Lovlie I* [Doc. Nos. 93, 108, 111, 112, 136].)

### B. Current Allegations

As noted, Mr. Lovlie's current lawsuit is filed against the Government, ten Individual Government Defendants[3], and his former private attorney, Mr. Zimmerman.

In the Complaint here, Mr. Lovlie explains that he came to the United States from Norway in 1960 to further his education, and later worked at CPA firms before eventually starting his own bookkeeping business, which he continues to operate. (Compl. at 2.) He prepares "a few business tax returns, and a few personal ones as well." (*Id*.)

Mr. Lovlie asserts that in the course of the IRS auditing one of his clients, Defendant IRS Agent Dan P. Weiberg contacted him, demanding the client's corporate tax returns. (*Id*. at 3.) After Mr. Lovlie questioned the legitimacy of the audit notice, he alleges that Agent Weiberg retaliated against him and began investigating Mr. Lovlie's own tax filings, audited him, and initiated a criminal investigation and civil assessment action. (*Id*.)

He also alleges that in 2005, the IRS assigned another agent, Defendant Pam Owens, to collect the taxes due from him. (*Id*. at 4.) In the fall of 2005, Mr. Lovlie contends that he obtained copies of his IRS records through a Freedom of Information Act request. (*Id*.) He alleges that his records included executed copies of IRS Form 872, in which a taxpayer can consent to extend the time for the IRS to assess taxes. (*Id*.) Mr. Lovlie alleges that these forms were fraudulent and that he had never signed Form 872 for any of the tax years

---

[3] The Complaint includes the titles of nine of the Individual Government Defendants, whom Mr. Lovlie identifies as current or former employees of the IRS or DOJ. (Compl. at 1.) Mr. Lovlie provides no title for Defendant Philip Doyle. However, the docket in *Lovlie I* reflects Mr. Doyle's status as an attorney in the DOJ's Tax Division. Accordingly, the Court considers him an Individual Government Defendant.

in question. (*Id.*) Mr. Lovlie further contends that he wrote to the IRS demanding the reversal of all assessments. (*Id.*) He requested that the IRS provide written confirmation of the receipt of his letter to his attorney, Mr. Zimmerman. (*Id.*) This is the first reference to Mr. Zimmerman in the Complaint.

Mr. Lovlie asserts that in July 2007, the IRS "started a legal action against me with the intent of taking possession of my home." (*Id.* at 5.) He alleges that the IRS's assessments for tax years 1990 through 1997 were improper because they occurred outside of the three-year assessment period. (*Id.* at 2, 6.) Again, Mr. Lovlie asserts that any extensions to the three-year assessment period were invalid and fraudulent because he did not sign them. (*Id.* at 4–5.)

Mr. Lovlie alleges that Mr. Zimmerman represented him at the time of the 2007 proceedings.[4] (*Id.* at 5.) He further alleges:

> My attorney at the time, Manley [sic] Zimmerman, seemed not to be very effective in his defense, but my financial position at this time did not give me the option to seek the services of another attorney. I recommended to him several things he should do, such as demanding copies of the actual Forms 872 that must have been part of the assessments against me personally. I gave him several copies of the letters with attachment that I had sent to the IRS Midwest Area Director. I told him to share those with whoever he was dealing with on the IRS side. His response on more than one occasion: "What's the use? We are up against the government. They can do anything they want."

---

[4] Prior to Mr. Zimmerman's representation, Mr. Lovlie was represented by Thomas Iliff from approximately 1997 until Mr. Iliff's death in 2000. (Compl. at 3, 5.)

(*Id.*)  Mr. Lovlie contends that Mr. Zimmerman's alleged "inaction" during the IRS civil assessment lawsuit, *Lovlie I*, caused the Court to grant summary judgment to the IRS and led to the sale of his home.  (*Id.*)

### C. Defendants' Dispositive Motions

#### 1. Government's Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Government seeks dismissal based on the principle of res judicata.  (Gov't Mem. in Supp. Mot. to Dismiss ("Gov't Mem.") [Doc. No. 18] to Dismiss at 5–9.)  The Court assumes that the Government's Motion to Dismiss seeks dismissal as to the Individual Government Defendants as well.  (*See id*. at 7–8) (noting that Mr. Lovlie has sued the Government and its agencies and employees regarding the same tax liabilities at issue in *Lovlie I*, and that each party in this case was either a party of or privy to *Lovlie I*.)  The Government argues that because this case and *Lovlie I* arise out of the same nucleus of operative facts and involve the same parties and their privies, res judicata bars relitigating matters that were actually litigated or could have been litigated in the earlier proceeding.  (*Id*. at 6–7.)

In opposition, Mr. Lovlie challenges all of the tax assessments for the years 1990 through 1997, but confirms that the assessments for years 1998 through 2002 were proper.  (Pl.'s Opp'n to Gov't [Doc. No. 35] at 2.)  He contends that unless the Government can provide proof of unreported income equal to 25% of the original income reported, or more, the six-year limitations period is inapplicable "and must be reversed" to the three-year limitations period.  (*Id*. at 2.)  Mr. Lovlie therefore demands supporting documentation for the taxable income that formed the basis for the *Lovlie I* judgment.  (*Id*. at 3.)  He

7

acknowledges, however, that the Court may "find that this case should not move forward due to res judicata." (*Id*. at 5.)

In their Reply, the Government reiterates its res judicata argument and asserts that Mr. Lovlie sought the same documents in *Lovlie I* that he demands in this litigation. (Gov't Reply [Doc. No. 44] at 3–4.)

### 2. Mr. Zimmerman's Motion for Judgment on the Pleadings

In Mr. Zimmerman's Motion for Judgment on the Pleadings, he argues that: (1) the Complaint does not plausibly plead RICO or legal malpractice claims against him; and (2) the facts alleged in the Complaint and materials embraced by the pleadings establish that any claims arising from Mr. Zimmerman's provision of legal services to Mr. Lovlie are time-barred by the applicable statutes of limitation. (Def. Zimmerman's Mem. in Supp. Mot for J. on the Pleadings ("Def. Zimmerman's Mem.") [Doc. No. 26] at 8–14.)

## II.   DISCUSSION

### A. Standard of Review

Motions to dismiss under Rule 12(b)(6) and motions for judgment on the pleadings under Rule 12(c) are subject to the same standard of review. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990); *see also Spagna v. Phi Kappa Psi, Inc.*, 30 F.4th 710, 715 (8th Cir. 2022). The Court must accept the facts alleged in the complaint as true, and view those allegations in the light most favorable to the plaintiff. *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013); *State Farm Auto. Ins. Co. v. Merrill*, 353 F. Supp. 3d 835, 837, 841 (D. Minn. 2018). However, the Court need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations. *Hager*,

735 F.3d at 1013. In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss. *See* Fed. R. Civ. P. 12(d). The Court may, however, "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010)).

"Dismissal on the basis of res judicata at the pleading stage is appropriate if the defense is apparent on the face of the complaint." *Magee v. Hamline Univ.*, 775 F.3d 1057, 1058–59 (8th Cir. 2015) (quoting *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763–64 (8th Cir. 2012)). The "face of the complaint" includes public records, materials attached to the complaint, and materials embraced by the complaint. *C.H. Robinson*, 695 F.3d at 764. In the Complaint here, Mr. Lovlie expressly refers to the prior lawsuit, stating, for example, "In July 2007 IRS [sic] started a legal action against me with the intent of taking possession of my home." (Compl. at 5.) Additionally, he alleges that Mr. Zimmerman was his attorney at the time and that "Zimmerman's inaction caused the IRS to be granted summary judgment." (*Id.*) Also related to *Lovlie I*, he alleges, "In April 2009, we were forced to leave our home," which was sold in September 2009. (*Id.*) Thus, the Court finds that items appearing in the record of *Lovlie I* are embraced by the pleadings.

Even if *Lovlie I* were not embraced by the pleadings, the Court would take judicial notice of this prior litigation. *Graham v. Catamaran Health Sols. LLC*, 940 F.3d 401, 405 (8th Cir. 2017) ("Even when addressing a motion to dismiss, we may take judicial notice of filings of public record and the fact (but not the veracity) of parties' assertions therein."); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (noting that when

9

considering a motion for judgment on the pleadings, a court may consider some materials that are part of the public record). Thus, because *Lovlie I* is a matter of public record, the Court finds it appropriate to consider the record in that case.

### B. Government's Motion to Dismiss

#### 1. Res Judicata

Again, the Government seeks dismissal on grounds of res judicata, based on the resolution of claims in *Lovlie I*. The doctrine of res judicata prevents "the relitigation of a claim on grounds that were raised or could have been raised in the prior suit." *Banks v. Int'l Union Elec., Elec., Tech., Salaried & Mach. Workers*, 390 F.3d 1049, 1052 (8th Cir. 2004). The Eighth Circuit applies the following three-part inquiry to determine whether res judicata applies: "(1) whether the prior judgment was rendered by a court of competent jurisdiction; (2) whether the prior judgment was a final judgment on the merits; and (3) whether the same cause of action and the same parties or their privies were involved in both cases." *Id*. Res judicata bars a claim if it "arises out of the same nucleus of operative facts as the prior claim." *Id*. The Government contends that all of these elements are met. (Gov't Mem. at 6–8.) In response to the Government's Motion to Dismiss, Mr. Lovlie simply reiterates the arguments that form the basis of his Complaint. He does not address the elements of res judicata.

As to the first two elements for the application of res judicata, there is no question that the judgment in *Lovlie I* was rendered by a court of competent jurisdiction—this District Court—and that the judgment was final on the merits.

As to the third element—whether the same cause of action and the same parties or their privies were involved—both this lawsuit and *Lovlie I* concerned Mr. Lovlie's tax liabilities for tax years 1990 through 2002.  Those liabilities were fully adjudicated in *Lovlie I*, which was brought by the United States against Mr. Lovlie and his wife.  As a result of the tax assessments, federal tax liens attached to Mr. Lovlie's property and he failed to pay the assessed taxes.  Judge Magnuson reduced the tax liabilities to judgment, and also permitted the IRS to enforce the tax liens against the Lovlies' property.  Even earlier, the Tax Court adjudicated Mr. Lovlie's liabilities for tax years 1990 to 1994.  All of these facts are the same or similar to the facts that form the basis of the instant lawsuit.  Mr. Lovlie even previously argued in *Lovlie I* that the assessments against him resulted from "a vendetta by retired agent Weiberg," just as he argues here.  (*Compare Lovlie I*, Aug. 1, 2008 Letter [Doc. No. 53] at 4, *with* Compl. at 3.)

Mr. Lovlie's arguments in opposition to the instant motion undermine any challenge to the application of res judicata.  He seeks to reopen discovery to attack the judgment in *Lovlie I*, arguing that

> [n]o evidence of unreported income was presented in the previous trial.  Plaintiff's position is that no such evidence exists.  Plaintiff had no unreported income.  Plaintiff is demanding evidence of Defendants' claim of unreported income for all 8 years.  If such evidence is found to exist, the 6-year [limitations period] must be reversed to the 3-year [limitations period] for all 8 years, and all assessments created without supporting evidence must be reversed.

(Pl.'s Opp'n to Gov't at 4.)  While Mr. Lovlie recognizes that the Court may apply res judicata, he questions how he is "to ever defend himself against fraudulent activity by an IRS agent," "without the defendants supplying the requested information." (*Id.*)

11

Mr. Lovlie has had at least two opportunities to contest the tax liabilities at issue, however: first, before the Tax Court, and second, before the District Court, in *Lovlie I*. In fact, in *Lovlie I*, Judge Magnuson applied res judicata based on the Tax Court's earlier judgment concerning the assessment for the tax years 1990 to 1994. (*Lovlie I*, Summ. J. Order at 3.) As to other tax years, Judge Magnuson rejected the same argument that Mr. Lovlie affirmatively asserts here regarding the six-year limitations period versus the three-year period. (*Id*.) Finally, Judge Magnuson rejected the Lovlies' belated arguments about missing IRS documentation for the assessments for tax years 1995 through 1997. (*Id*. at 8.) These are the same issues at the heart of this lawsuit, involving the same parties or their privies.

To the extent that Mr. Lovlie argues the Government's more recent efforts to collect his remaining judgment debt fall outside the common nucleus of operative facts determined in *Lovlie I*, he appears to allege that the statute of limitations on collections expired in 2014, and that any IRS liens should be released and any funds collected, post-2014, should be returned to him. (Compl. at 5, 7.) The Court disagrees. The efforts of the IRS to collect on Mr. Lovlie's remaining judgment debt relate to the determination of liability in *Lovlie I*. Such collection efforts fall within the same nucleus of operative facts determined in *Lovlie I*. Having found that all the elements for res judicata have been met for Mr. Lovlie's claims against the Government, the Court grants the Government's Motion to Dismiss on this basis.

Additionally, as to more recent collection efforts, the Government asserts that a timely suit to reduce tax assessments to judgment stops the running of the statute of

limitations on collection, as a matter of law, and the resulting judgment can be enforced at any time. (Gov't Mem. at 8–9) (citing 26 U.S.C. § 6502; *United States v. Brickman*, 906 F. Supp. 1164, 1168–69 (N.D. Ill. 1995) ("The court proceeding brought against J. Brickman was sufficient to stop the running of the statute of limitations contained within § 6502, and the resulting judgment could thereafter be enforced at any time."); *United States v. Wodtke*, 627 F. Supp. 1034, 1041 (N.D. Iowa 1985) (The [Government's] suit tolls the statutory period, the obtaining of a judgment will keep the time for collection open indefinitely, and will correspondingly extend the life of the lien. The lien is effective against the taxpayer even if not filed.") (internal citations omitted), *aff'd*, 871 F.2d 1092 (8th Cir. 1988)). Thus, Mr. Lovlie additionally fails to state a claim on which relief can be granted on this basis.

For all of these reasons, Plaintiff's claim against the Government is dismissed with prejudice.

### 2. Individual Government Defendants

Because Mr. Lovlie's claims against the Government are identical to those against the Individual Government Defendants, the Court finds that res judicata bars the claims against the Individual Government Defendants, and requires their dismissal with prejudice, for the reasons discussed above.

In addition, of the ten Individual Government Defendants, Mr. Lovlie names five of them in the caption of his Complaint (Zoss, Fink, Pahl, Roessner, and Dicicco), but makes no other reference to them in any of his allegations or claims. While a plaintiff need not allege facts in painstaking detail, the facts alleged must have enough specificity "to raise a

right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "This standard demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While the Court construes a pro se party's pleadings liberally, a pro se complaint must still allege sufficient facts to support the claims advanced. *Sandknop v. Missouri Dep't of Corrs.*, 932 F.3d 739, 742 (8th Cir. 2019). The Complaint fails to do so here. Also, as to a sixth Individual Government Defendant, Michael Karl, to the extent the Complaint contains factual allegations against him, they are both non-specific and speculative. Mr. Lovlie asserts that another defendant performed an allegedly unauthorized audit, "*possibl*y with the assistance of his manager, Michael Karl." (Compl. at 3) (emphasis added). Mr. Lovlie's claim against Defendant Karl is entirely speculative and cannot survive a Rule 12(b)(6) challenge. *Twombly*, 550 U.S. at 555. Accordingly, for these additional reasons, the Court finds that Mr. Lovlie fails to state a claim on which relief can be granted against Individual Government Defendants Zoss, Fink, Pahl, Roessner, Dicicco, and Karl.

In addition, Mr. Lovlie's claims against Individual Government Defendants Weiberg, Nichols, Owens, and Doyle fail to meet the plausibility requirements under *Iqbal* and *Twombly*. To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 545. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Iqbal*, 556 U.S. at 678. To the extent that Mr. Lovlie alleges *some* conduct on the part of Weiberg, Nichols, Owens, and Doyle, the alleged

14

conduct fails to qualify as predicate acts under the RICO statute. Liability under RICO is premised on conduct that involves a pattern of racketeering activity.[5] *Manion v. Freund*, 967 F.2d 1183, 1185 (8th Cir. 1992); 18 U.S.C. § 1962. "Racketeering activity" includes conduct that is indictable, such as mail, wire, or bank fraud under 18 U.S.C. §§ 1341, 1343, and 1344. 18 U.S.C. § 1961(1). As alleged in the Complaint, (Compl. at 2–7), these four Individual Government Defendants conducted investigations or litigation and attempted to collect taxes—conduct that falls far short of stating a plausible civil RICO claim. While Mr. Lovlie's allegations against Defendant Weiberg are slightly more specific, they still do not state a plausible civil RICO claim, and even if they did, in a case such as this, the statute of limitations for civil RICO claims is four years. *Agency Holding Corp. v. Malley-Duff*

---

[5] Although Plaintiff does not specify, the Court presumes he asserts a civil RICO claim based on "a pattern of racketeering activity." RICO prohibits a person associated with any enterprise engaged in interstate commerce from participating "in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). An "unlawful debt" for purposes of civil RICO liability is defined as a debt

> (A) incurred or contracted in gambling activity which was in violation of the law of the United States, . . . or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, . . . or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

18 U.S.C. § 1961. Mr. Lovlie's Complaint contains no allegations related to gambling or usurious lending, therefore, the Court assumes he asserts a civil RICO claim based on a pattern of racketeering activity. However, if he asserts a RICO claim based on the "collection of unlawful debt," the facts alleged in the Complaint fail to state such a claim as a matter of law.

*& Assocs., Inc.*, 483 U.S. 143, 156 (1987).  Defendant Weiberg's alleged conduct occurred outside of that period.  For these additional reasons, the Court finds that Mr. Lovlie fails to state a plausible claim for relief against Individual Government Defendants Weiberg, Nichols, Owens, and Doyle.

In short, Mr. Lovlie's allegations against the Individual Government Defendants are barred by res judicata and are not amenable to repleading, nor do they state plausible, non-speculative claims for relief under civil RICO.  Accordingly, pursuant to Rule 12(b)(6), the Court dismisses with prejudice the Individual Government Defendants.

### C. Mr. Zimmerman's Motion for Judgment on the Pleadings

Again, Mr. Zimmerman argues that he is entitled to judgment on the pleadings because the applicable statutes of limitations bar Mr. Lovlie's civil RICO and legal malpractice claims against him.  (Def. Zimmerman's Mem. at 8–10.)  As noted earlier, a motion for judgment on the pleadings may be granted based on the expiration of the applicable statute of limitations.  *Levitt v. Merck & Co., Inc.*, 914 F.3d 1169, 1171 (8th Cir. 2019).

#### 1. Civil RICO Four-Year Statute of Limitations

The four-year limitations period for a civil RICO claim begins to run when the plaintiff discovered or should have discovered the alleged injury.  *Schreier v. Drealan Kvilhaug Hoefker & Co. P.A.*, 611 F. Supp. 3d 746, 758 (D. Minn. 2020), *aff'd*, 992 F.3d 674 (8th Cir. 2021).  In the Complaint, the only conduct attributable to Mr. Zimmerman concerns his alleged "inaction," leading to the entry of summary judgment in the United States' favor in *Lovlie I*.  (Compl. at 5.)  Setting aside the question of whether such conduct

states a plausible RICO claim and whether it is contradicted by filings in the *Lovlie I* docket, the Clerk of Court entered judgment against Mr. Lovlie in *Lovlie I* on August 7, 2008.  Mr. Lovlie either discovered or should have discovered the alleged injury at that time.  Thus, the four-year limitations period for a RICO claim based on this alleged conduct expired in 2012.

In the same paragraph of the Complaint in which Mr. Lovlie addresses Mr. Zimmerman's alleged "inaction," he also refers to being evicted from his home in April 2009 and the sale of his home in September 2009.  (*Id*.)  To the extent he alleges that such injuries stemmed from Mr. Zimmerman's conduct, he either knew or should have known of the alleged conduct at those times, and the four-year limitations period would have expired in 2013.

It is clear from the face of the allegations in the Complaint that the statute of limitations has run for Mr. Lovlie's RICO claims against Mr. Zimmerman.  Therefore, Mr. Zimmerman's Motion for Judgment on the Pleadings is granted in this regard.

### 2. Legal Malpractice Six-Year Statute of Limitations

Mr. Lovlie's claim for legal malpractice, which forms part of the same case or controversy as his civil RICO claim, arises under state law.  Under Minnesota law, legal malpractice claims are governed by a six-year statute of limitations.  *Frederick v. Wallerich*, 907 N.W.2d 167, 172–73 (Minn. 2018) (citing Minn. Stat. § 541.05, subd. 1 (5)).  The statute of limitations begins to run when a cause of action accrues for legal malpractice.  *Id*.  Even assuming that Mr. Lovlie plausibly pleads a claim for legal malpractice, the time period for filing any malpractice claim based on Mr. Zimmerman's

alleged "inactivity" in representing Mr. Lovlie on summary judgment would have expired no later than August 2014—six years after the entry of summary judgment against Mr. Zimmerman. Similarly, the time for filing any claim of legal malpractice based on Mr. Lovlie's eviction or the sale of his home would have expired in 2015—six years after Mr. Lovlie's eviction and the sale of his home.

It is clear from the face of the allegations in the Complaint that the statute of limitations has run on Mr. Lovlie's legal malpractice claims against Mr. Zimmerman. Accordingly, the Court grants Mr. Zimmerman's Motion for Judgment on the Pleadings as to this claim as well.[6]

Finally, although Mr. Zimmerman additionally argues that Mr. Lovlie fails to state a claim on which relief can be granted as to both claims against him, because the Court has found these claims are time-barred, it need not address this additional ground for relief.

Accordingly, based on the submissions and the entire file and proceedings herein,

**IT IS HEREBY ORDERED THAT**

---

[6] The Court also notes that Mr. Lovlie did not file a response to Mr. Zimmerman's Motion for Judgment on the Pleadings. Mr. Lovlie's memorandum in opposition to the Government's Motion to Dismiss is captioned "Plaintiff's Response to Defendants' Motion to Dismiss." (Pl.'s Opp'n to Gov't at 1.) In it, he does not mention Mr. Zimmerman, he uses the singular noun "motion," and the filing is linked on the docket only to the Government's Motion to Dismiss. On September 19, 2024, Mr. Zimmerman's counsel filed a letter to the Court, noting the lack of a response from Mr. Lovlie. (Sept. 19, 2024 Letter [Doc. No. 47] at 1.) Mr. Lovlie filed no response to the letter. Indeed, as Mr. Zimmerman observes, the failure to respond to a motion to dismiss can be construed as abandonment of the claims implicated by the motion. *See Carlson v. Univ. of Nw.-St. Paul*, No. 23-cv-577 (JMB/ECW), 2024 WL 3495802, at *2 (D. Minn. July 22, 2024).

1. The Government's Motion to Dismiss [Doc. No. 16] is **GRANTED** and the United States of America is **DISMISSED WITH PREJUDICE**.

2. Defendant Manly A. Zimmerman's Motion for Judgment on the Pleadings [Doc. No. 23] is **GRANTED** and Mr. Zimmerman is **DISMISSED WITH PREJUDICE**.

3. The Individual Government Defendants—Dan P. Weiberg, Michael Karl, Timothy Nichols, David L. Zoss, Pam M. Owens, Faris R. Fink, Michael R. Pahl, Michael J. Roessner, John A. Dicicco, and Philip Doyle—are **DISMISSED WITH PREJUDICE**.

4. This action is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: January 13, 2025               s/Susan Richard Nelson
                                      SUSAN RICHARD NELSON
                                      United States District Judge